GRAYSON *v.* ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.

Opinion delivered February 21, 1910.

RAILROADS—CONTRIBUTORY NEGLIGENCE.—In an action against a railroad company for negligently injuring a trespasser on the railroad track it was not error to direct a verdict for the defendant where plaintiff's testimony shows that she was negligent in being in a place of danger, and fails to show that the trainmen were negligent after discovering that plaintiff was oblivious to her danger.

Appeal from Craighead Circuit Court, Lake City District; *Ed H. Mathes,* Special Judge; affirmed.

STATEMENT BY THE COURT.

Clara Grayson, a young woman, lives at Blytheville, Arkansas. On July 7, 1904, she stepped on the railroad track where it intersects one of the main thoroughfares of the city. The street had no sidewalks, but the main track of the railroad and the siding had sand and cinders placed upon it, which made it "a nice place to walk," and it was used, and had been used

for a period of two years, by pedestrians as a walk, "just like they would use one of the streets of the town." Her intention was to walk south down the track toward the depot, and on to her home. When she got on the main line at the crossing, she noticed an engine and two or three cars standing north of the crossing. Soon after she started down the track on the main line, the engine and cars started toward her. She walked on down the main line to the frog, a distance of about 100 feet. At the frog she looked back and saw the engine and cars still coming down the main line with the engine right about even with the switch. Thinking the engine and cars were going down the main line, she stepped over on the siding and walked on down the siding oblivious to her danger. When the engine passed the switch target, the brakeman threw the switch, and turned the cars down the siding, while the engine went down the main line. At the time the engine passed the switch, it was going at the rate of about 6 miles an hour, but the cars were moving not so fast. She walked on down the siding, first in the middle of the siding and then two or three steps on the end of the ties, in all a distance of 140 feet from the switch target, when the detached cars struck her in the back and injured her. At the time, and just before, the detached cars struck her, the engine was passing her on the main line a few feet away making so much noise that she did not hear the cars approaching her from the rear and the outcry of bystanders some distance away. It was daylight. Clara was a young woman, having good use of her senses of sight and hearing. There was a path fourteen feet wide leading from the main street crossing to the depot. This path was smooth and covered with cinders, and people were accustomed to walk thereon going toward the depot. She thought the train she saw was the local. She had often seen the local do switching on the track where she was injured. She did not know that any of the cars were going down the switch track that day, but supposed they were on the main line, and hence she was walking on the siding and on the end of the ties of the siding.

The above states the facts in the strongest light that they may be considered from the viewpoint of appellant.

She brought her suit for damages against appellee, alleging

that its agents and employees negligently "run its train of cars upon and against plaintiff, thereby knocking her down and permanently injuring her internally."

The appellee denied the allegation of negligence, and set up the defense of contributory negligence. The court directed the jury to return a verdict in favor of appellee. To reverse the judgment in favor of appellee this appeal has been duly prosecuted.

*D. F. Taylor* and *J. T. Coston*, for appellant.

1. Appellee having covered its switch and main line of its railroad with sand and cinders for the purpose of making it a suitable walkway for pedestrians, which had been in use by such pedestrians more than two years prior to appellant's injury, she was not a bare licensee, but was on appellant's track by invitation, and it owed her the duty of ordinary care to discover her presence and avoid the injury. 92 S. W. 791; 27 Atl. 479; 51 Atl. 506; 98 N. W. 143; 89 S. W. 987; 63 S. W. 1054; 57 S. W. 602; 56 S. W. 699; 94 S. W. 971; 74 Fed. 359. Failure of appellee to exercise such ordinary care was negligence, and it is liable for the resultant injury, unless she herself was guilty of contributory negligence in failing to continue to look for the approaching train after she stepped upon the side track. In the light of the misleading circumstances, believing, as any reasonably prudent person would have believed, that the cars following the engine would follow it down the main track, she cannot be held to the duty to look for the approach of the cars after she stepped upon the side track, and she was, therefore, not guilty of contributory negligence. 93 S. W. (Ark.) 564; 95 S. W. 491-2-3.

2. The making of a "flying switch" is so fraught with danger to human life, so prolific a source of injuries, that public policy, as well as humanity, requires that railroads be held liable for such injuries, even though the injured party be a bare licensee or a mere trespasser. 2 Thompson on Neg., § 1717; 15 S. W. 921; 12 S. W. 765-6; 10 S. W. 345-6; 12 S. W. 919.

3. Even if appellant was guilty of contributory negligence, yet, her peril having been discovered by the switchman in time to have prevented the injury by the exercise of ordinary care, appellant is still liable, under the "last clear chance" doctrine.

He had no right, under the circumstances of this case, to presume that appellant would get off of the track without some warning of danger. 86 S. W. 429; 62 Tex. 254; 54 S. W. 631-2; 1 Wigmore, Ev. § 460; 44 Pa. 608; 86 S. W. 305; 95 S. W. 137-8; 104 S. W. 534; 96 S. W. 979; 117 S. W. 543; 109 S. W. 515.

*W. F. Evans* and *W. J. Orr,* for appellee.

It is immaterial whether appellant was an invited guest, bare licensee or trespasser. If one in the full possession of all his senses and faculties steps upon a railroad track at a public crossing, or elsewhere, discovers a train approaching, and, having the present ability to escape to a place of safety by taking to the safer of two routes offered, fails to do so but deliberately continues in the dangerous route, he is guilty of contributory negligence. Appellant, according to her own statement, was guilty of such negligence. 84 Ark. 270, and cases cited below. A breach of duty with reference to "flying switches" would give no right of action unless the injured party was on or about to use a public highway in a town. Appellant was not on such a highway. Discovered peril is not alleged in the complaint. Moreover, there is no evidence that appellant's peril was discovered by any one having the ability to prevent the injury in time to have done so. 62 Ind. 301; 123 Wis. 297; 85 N. W. 1018; 32 So. 507; 114 Ala. 492; 70 Ark. 603; 26 Ark. 3; 64 S. W. 350; 88 S. W. 1001; 40 Ark. 298; 49 Ark. 277; 54 Ark. 25; 59 Ark. 122; 33 S. W. 1054; 16 S. W. 169; 49 Ark. 106; 46 Ark. 513; 88 S. W. 824; 91 S. W. 747; 99 S. W. 693; 91 S. W. 748; 103 S. W. 725; 49 Ark. 257; 36 Ark. 374; 62 Ark. 245; 54 Ark. 431; 69 Ark. 134; 64 Ark. 364.

Wood, J., (after stating the facts). The judgment was correct. Conceding that it was a question for the jury as to whether appellant was negligent in making the flying switch under the facts in evidence, appellee was nevertheless negligent in walking where she did under the circumstances, and this negligence contributed proximately to the injury of which she here complains.

Giving the evidence its strongest probative force in favor of appellant, it still shows beyond controversy contributory negligence on her part. The uncontradicted evidence shows that ap-

pellant knew, when she reached the main line at the crossing on her way home, that "the train was standing about the alley north of Main street." Appellant herself testified that she looked "back and saw the engine and cars all coming down the main line." When she "looked back the last time, the engine and cars were on the crossing, and the engine was about at the switch." This testimony by appellant shows that she knew the train was moving in the direction she was going. Appellant knowing that the engine and cars were following her, it was negligence of the reckless kind for her to walk either down the main line or the siding without definitely ascertaining, before she did so, on which track the engine and cars would go, or whether the engine would go on one track and the cars on the other, as they often did in making the flying switch. Appellant's testimony shows that she knew that the *local,* which she supposed this train to be, often did switching at this point. She expected it to do switching that day as usual, she heard the engine "start up quick, like it was about to switch cars," yet she did not take the pains to ascertain whether any cars were switched on to the side track where she was walking or not, but carelessly walked on, as appellant's counsel says, "oblivious to her danger." It is undoubtedly true that she was oblivious of her danger, but why was she oblivious? She had no right to be oblivious. It was her duty, with the train following in her footsteps, to be alert and thoughtful. She had no right to suppose that the train would go on the main line, and not on the siding. She could not speculate about which track the train would take, and escape the disastrous consequences of such speculation. It was her duty to know under the circumstances which track the train had taken before she put her foot in the dangerous way, when the way of perfect safety was open to her.

In *Burns* v. *St. Louis S. W. Ry. Co.,* 76 Ark. 10, the facts were stated as follows. "Burns had just left the depot, and saw a train standing just northeast of the depot at the tank, and knew that it could not get on the 'passing' track until it came thirty steps south of the depot; and about time said freight train reached said 'passing' track he turned round and looked at it, and saw it turn, *as he thought,* on the 'passing' track, which

he was then on, as it was the custom of trains of that kind to do. He was familiar with the different trains on the Cotton Belt Railroad. Some are local freight trains, and some are through freight trains, and there are fifteen or twenty passing during the day. Now, he walked down the 'passing' track for some distance, which was the common walk way, and, hearing the train move rapidly, thought it would be safer to step over on the main track, and be further away, so it could pass. He used his eyes, and he thought he saw it go on the 'passing' track, as it was the custom of that class of trains to do so."

Of these facts the court said: "This leaves nothing for the jury. According to familiar rules often announced by this court, appellant did not make that use of his senses for his own protection which the law exacts before he can recover for the negligence of the company that concurred in his injury.

"Appellant's great familiarity with the tracks and trains where he was injured, and the ever imminence of peril, where there was so much passing and switching, should have kept his senses alert, and have caused him to walk between the railroad tracks where, according to the witnesses, it was 'nice and smooth' and free from all danger. The law wisely and justly holds the company liable for its own acts of negligence which result in injury to another. But there would be no reason or justice in holding it responsible for the mistakes of another which it did not cause, and could not prevent, and but for which there would have been no injury, notwithstanding its own negligence."

The facts in the case at bar showing conclusively the contributory negligence of appellant are even stronger than they were in the above case. See other cases there cited and also the case of *St. Louis & S. F. Rd. Co.* v. *Ferrell,* 84 Ark. 270.

The complaint does not allege that appellee was liable because of the discovered peril of appellant in time to have avoided injuring her. But, treating that as an issue upon the testimony that was offered without objection from appellee, still there is no evidence to warrant a finding against appellee on that issue. While there is some evidence tending to show, and that would justify a finding, that appellee's servant discovered appellant, there is no evidence whatever that he knew that she was oblivious to her danger. On the contrary, the undisputed

evidence is that she had loooked back, and, while she says she "didn't see anybody" when "she looked back," yet other witnesses in her behalf and witnesses for appellee testify that the switchman was at the switch. Then, if the switchman was there and saw appellant, when he discovered her he had the right to rest upon the assurance that she was cognizant of the fact that the train was following her, for she had looked and had seen it. He was not culpable for not giving her further warning or for not making a more strenuous endeavor to rescue her. For, from his viewpoint, as appellant's witnesses place him, he could see that appellant was not unconscious of the movements of the train, and therefore he had the right to assume that she would exercise the ordinary prudence of an intelligent person, conscious of danger, and step aside, out of harm's reach, as the cars passed by.

The proof did not make appellee liable. There was no issue of fact for the jury. Affirmed.