TINSLEY *v.* MISSOURI PACIFIC RAILROAD COMPANY.

4-3511

Opinion delivered July 9, 1934.

*W. W. Bandy,* for appellants.

*Thomas B. Pryor* and *Daggett & Daggett,* for appellee.

BUTLER, J. On October 26, 1932, at about 1 o'clock, A. M., the appellants were traveling in an automobile along Highway No. 39 within the corporate limits of the city of Paragould. This highway crossed the line of the appellee railroad company at right angles. When appellants reached the intersection of the highway and the railroad, their automobile ran into a moving passenger train. The automobile was demolished, and the appellants suffered certain personal injuries. Suit was instituted by the appellants to recover for the value of the automobile and for damage to them by reason of the personal injuries sustained. At the conclusion of the testimony, the court directed a verdict for the appellee on the theory that the undisputed evidence showed that the negligence of the appellants was the proximate cause of the collision.

The plaintiffs alleged that the passenger train with which they collided was traveling at a rate in excess of that provided by the ordinance of the city; that the statutory signals were not given as the train approached the crossing; that the bell was not rung or the whistle sounded; and that the train was moving at a high and excessive rate of speed, which acts of negligence were the direct cause of the collision and the injuries sustained. The answer of the defendant was a general denial of the allegations of the complaint with a plea that the

injuries sustained were the result of the negligence of the plaintiffs themselves.

The evidence which tended most strongly to establish the liability of the railroad company was that of the appellants themselves, which, viewed in the light most favorable to them, may be stated as follows: The appellants were young men from nineteen to twenty years of age. On the evening of the accident they had been attending some social function in the neighborhood, and after its conclusion had carried some girls home. At the time of the collision they were on their way to their own homes. It was raining and the night was dark. The windows on the sides of the car had water on them. They were traveling in a closed car with all the windows up except the one on the driver's side which was lowered about two inches. The windshield wiper was working, and the brakes were in good condition. The railroad ran north and south and the highway crossed it from east to west. The appellants were approaching the railroad from the west traveling east and their view of the railroad was obscured by houses on the south of the highway to a distance of about 123 feet from the line of railroad and on the north by houses to a distance approximately forty-five feet from the railroad. When they reached a point where their view to the south was unobstructed, they looked and saw the headlight of a locomotive. One of the appellants judged it to be about 789 feet south of the crossing and the other estimated it at 500 feet. They were traveling at the rate of fifteen to twenty miles an hour and continued, after seeing the headlight, without further looking to the south, to approach the railroad at that speed. When they passed the last house on the north of the highway—about 45 feet from the crossing—they looked to the north and, seeing no sign of danger in that direction, kept driving until within about 24 feet of the railroad track, the locomotive suddenly "loomed" on the track before them. The driver applied his brakes, but was unable to check his car so as to prevent striking the train. The front end of the automobile ran against the baggage coach, striking the steps of the same which descended from the door. The

impact bent the steps of the baggage coach and deflected the automobile from the highway causing it to crash through a line of posts and into a ditch. The automobile was practically demolished and the appellants injured.

The appellants testified that the train was moving at a speed, variously estimated, at from thirty to fifty miles an hour, and offered to introduce the ordinance of the city of Paragould fixing the maximum at which trains should be operated through the city limits. This testimony was objected to by the defendant company, and the objection was sustained over the exception of the appellants. Appellants also introduced testimony to the effect that no signals were being given as the train approached the crossing either by ringing a bell or sounding a whistle. This testimony was excluded by the court.

Appellants insist that the court erred in refusing to accept the testimony offered relative to the speed limit prescribed by the city ordinance and in excluding from the jury evidence tending to show that no signals were given by the engineer and fireman. They also insist that the testimony raised a question for the jury as to whether or not the collision was the result of the negligence of the railway company and whether or not the collision was occasioned by their negligence.

Under the undisputed facts, it is immaterial whether or not the signals were given and what was the rate of speed of the moving passenger train. By their own admission the appellants were cognizant of the fact that a train of some character was just south of the crossing, and therefore the blowing of the whistle or sounding of the bell would have given them no information not already in their possession, and the failure to give these signals was not the proximate cause of the injury. *St. L. S. F. R. Co.* v. *Ferrell,* 84 Ark. 275, 105 S. W. 263; *C. R. I. & P. Ry. Co.* v. *Elzen,* 132 Ark. 431, 200 S. W. 1000; *Tyler* v. *St. L. I. M. & S. R. Co.,* 130 Ark. 583, 198 S. W. 128.

The appellants in their testimony attempted to justify their conduct by saying that they did not realize that the train was on the main line when they saw the headlight, but thought it was on a side track, but, from

534

the testimony of the appellant, McHaney, it appears that the side track intersected with the main line about sixty-eight feet south of the crossing, and both of the appellants were familiar with the surroundings in the vicinity of the crossing. It also developed from their testimony that they did not anticipate the approach of any train at that hour, but were of the opinion that it had passed about 11 o'clock. The proof is undisputed, however, that the appellants did in fact see the headlight of the approaching train at a point from 123 to 80 feet of the crossing and paid no further attention to it, but drove heedlessly along taking no precaution for their own safety, and the passing train did not strike them. They struck it after the entire locomotive and tender had passed and one-half of the baggage coach. The conclusion is inescapable that the only cause of the collision was the negligence of the appellants themselves, and that the speed of the train was immaterial. Therefore, there was no error in the court's refusal to permit the introduction of the city ordinance, and the court correctly directed a verdict in favor of the appellee.

Judgment affirmed.