St. Louis & San Francisco Railroad Company *v.* Ferrell.

Opinion delivered November 4, 1907.

1. Railroad—negligence—proximate cause.—The fact that defendant's train was being run at an extraordinary and unusual rate of speed through an incorporated town will not render defendant liable for killing plaintiff's intestate if there was nothing to show that the killing would not have occurred if the rate of speed had been moderated. (Page 275.)

2. Same—failure to signal.—A railroad company is not liable for the accidental killing of a person upon its track because those in charge of the train did not give signals to apprise deceased of the approach of the train if he knew that the train was approaching. (Page 275.)

3. Same—stakes along track.—A railroad company is not liable for an injury to a traveler upon its track who stumbled on a stake which was properly there and fell in front of a train and was killed, as his stumbling was not one of the things which would reasonably be expected to occur. (Page 275.)

4. Same—contributory negligence.—One who attempted to cross a railroad track immediately in front of a train of whose approach he is aware and was killed was guilty of such contributory negligence as will debar his intestate from recovering for the negligence of the railroad company. (Page 276.)

Appeal from Mississippi Circuit Court; *Frank Smith,* Judge; reversed.

## STATEMENT BY THE COURT.

Rowena Ferrell, as administratrix of the estate of her deceased husband, Lou M. Ferrell, brought this action against the St. Louis & San Francisco Railroad Company for damages for the alleged negligent killing of said Ferrell by a train of the appellant company, and recovered a verdict of $4,000 for the benefit of his widow and children. Judgment was rendered thereon, and the defendant company has appealed.

The case is refreshingly free from conflicting evidence. The testimony as to the death of Mr. Ferrell comes from disinterested witnesses, who were his companions at the time. Taking that testimony most strongly in favor of the plaintiff, the following facts appear: ·

Osceola is divided into two sections, known as Old Town and New Town. Hale Avenue connects the two sections. The two leading hotels of the town are situated on Hale Avenue. one on the east and one on the west of the railroad tracks, which cross Hale avenue at right angles. There were two tracks leading from Hale avenue to the depot, the main track and on the west thereof a passing track; and, further south, a house or commercial track joined the main track on the east side and ran on south of the station. Where this accident occurred, there were the three tracks, which will be referred to as the "main line," "west track," and "east track."

The main line was raised about twelve inches above the east and west tracks, and in order to do this work grade stakes were driven one hundred feet apart on each side of the main track. They were left there for the purpose of bringing the level of the main line to the grade as indicated by these stakes, and the work was still being done for that purpose by the section hands, not by the regular construction gang, which had left there before this time. It was essential that the stakes remain until the track had become settled to the required elevation, in order that the section hands might properly do the work; and they were reset when it became necessary, and when they were knocked down they were replaced. These stakes were about one inch thick, about two inches wide, and at this point about twelve inches above the level of the ground, reaching to the level of the

top rail, and were set about twelve inches from the ends of the ties.

In the spring of 1904 the station at Osceola was moved to a point in a field, about 1,500 feet south of Hale Avenue, and on the east side of the main line. From that time until the time of the death of Mr. Ferrell, in December, the railroad tracks from Hale Avenue to the depot had been constantly used by the public, particularly the traveling public, especially those stopping at the hotels. This was due to several reasons. No good street or walk way had been built to the depot, and the railroad tracks were a little raised above the surrounding country, and were covered with sand, making a much better walk than any other route. It may be assumed that the use of these tracks from Hale Avenue to the depot was so common and well-known to the railroad company that the public was impliedly licensed to use that route at the time that Mr. Ferrell and his companions were using it.

Messrs. Ferrell, Bell, Merrell, Noonan and Speck were attending court at Osceola, and desired to go to their homes south of there, and went to take the train which passed through Osceola going south about seven o'clock the night of December 10, 1904.

They started from their hotel to walk to the station by way of the tracks. Messrs. Merrell, Speck and Noonan were in advance of the main line, and Messrs. Bell and Ferrell were walking together on the west track. These gentlemen were walking leisurely and engaged in conversation. They thought they were in ample time for their train.

When they were about a third of the way from Hale Avenue to the station, they heard a train coming, which they supposed to be the passenger, but which proved to be a through freight, which did not stop at Osceola. It was going at a speed variously estimated from 25 to 40 miles an hour.

In order to catch their train, they commenced running, hoping to reach the station before the train would leave there. The three gentlemen in front turned from the main track to the west track, and ran for some distance until the train passed them. None of them saw the accident.

Messrs. Bell and Ferrell ran for some distance along the

west track where they had been walking. Mr. Bell outran Mr.
Ferrell, but was only a short distance ahead of him. Mr. Bell
thought they had better get on the east side, as that was the
side the station was on. He crossed over from the west track
to the east track, crossing the main line diagonally as he ran.
He called to Ferrell to come across to that side. He continued
to run a short distance, and then hearing the roaring of the train
behind him he turned to look, and just as he did so saw Mr.
Ferrell with outstretched arms falling before the train. Mr.
Ferrell had evidently stumbled on one of the grading stakes, as
was demonstrated by examination next day. Mr. Bell could not
tell whether the train struck Mr. Ferrell before he fell to the
ground or not. The glare from the headlight just enabled him
to catch a glimpse of Mr. Ferrell in the act of falling with out-
stretched arms, in a position as if having stumbled over some
obstruction.

*L. F. Parker, W. F. Evans* and *W. J. Orr,* for appellant.

1. Under the pleadings and proof in this case, appellee
ought not to recover because, by the undisputed evidence, it is
shown that Ferrell's own negligence contributed to the injury,
and there is neither allegation nor proof that his peril was dis-
covered or could have been discovered in time to have avoided
the injury. 26 Ark. 3; 33 S. W. 1054; 16 S. W. 169; 49 Ark.
106; 34 S. W. 882; 46 Ark. 513; 39 S. W. 62; 88 S. W. 824; 103
S. W. 725; 49 Ark. 257; 36 Ark. 374; 62 Ark. 245; 57 Ark. 461;
102 S. W. 369; 47 Ark. 497; 45 246; 54 Ark. 431; 69 Ark. 134;
64 Ark. 364; 35 S. W. 216; 34 S. W. 545. That it is negligence
*per se* for an adult person in full possession of his senses to at-
tempt to cross a railroad track immediately in front of a rap-
idly moving train is too well established to need citation of au-
thorities.

2. If it was negligence on the part of the appellant to
maintain the grading stakes along the track, which is not con-
ceded, appellant is not aided, because of the deceased's contribu-
tory negligence. But there was no negligence in placing and
maintaining the stakes along the track. 84 Pac. 140; 67 N. E.
376; 2 Thompson, Neg. § § 1713, 1705; 3 Elliott on Railroads, §
1250; 14 Fed. 855.

*J. T. Coston,* and *Murphy, Coleman & Lewis,* for appellee.

Appellant knew that the people were accustomed to use, and were practically forced to use, its tracks in going to and from its depot, and impliedly invited such use.

At a time when one of its passenger trains was due, when it was chargeable with notice that many people would be walking along its road bed, it ran this freight train through immediately in front of the passenger train, without ringing a bell or sounding a whistle, or slackening its speed and with no lookout kept at the time by its engineer and fireman. Under this state of facts appellant is liable, notwithstanding the contributory negligence of Ferrell. 2 Cooley on Torts, 3 Ed. 1442; 33 Ill. App. 479; 53 Ill. App. 478; 152 Fed. 134; 13 Wash. 525. Under the proof Ferrell was a licensee by implied invitation, and those in charge of appellant's train were required to anticipate his presence on the track and to use reasonable precautions to prevent injury to him. 94 Fed. 321; 74 Fed. 350; 2 Thompson, Neg. 2 Ed. 1726; 76 Wis. 542; 15 S. W. (Ky.), 665; 88 S. W. (Tex.), 192; 19 S. W. (Mo.), 1114; 104 Fed. 119; 99 N. C. 298; 30 W. Va. 229; 74 Fed 285; 90 Tex. 314; 104 Fed. 741; 14 Ore. 551; 89 S. W. 24; 113 Pa. St. 162; 16 Utah, 42; 92 N. Y. 289; 94 Va. 449; 79 Ill. App. 22.

2. While ordinarily a railway company has the right to place grading stakes along its right of way and between its tracks, and it is not negligence on its part to so place them, yet if it places or leaves them where it has impliedly licensed the public to go, and where they become, by reason of this license and use, a source of danger to the public, this is negligence on the part of the company. 105 Cal. 388; 103 La. 649; 80 Mich. 390; 104 Fed. 119; 89 S. W. 863; 102 U. S. 577; 77 Ark. 566; 46 Ark. 182; 100 S. W. 901.

Hill, C. J., (after stating facts.) The complaint in this case is predicated upon the following charges of negligence:

First, that the train was running through the corporate limits of Osceola at an extraordinary and unusual rate of speed.

Second, that those in charge of the train did not give signals by sounding the whistle or ringing the bell to apprise deceased of the approach of the train.

Third, that the train operatives were not keeping a constant

lookout, as required by law, for persons and property upon the tracks.

Fourth, the presence of the stake upon which Mr. Ferrell stumbled.

1. The rate of speed was shown to be from 25 to 40 miles an hour, as variously estimated. There was no evidence that this was contrary to municipal law of the town of Osceola. But if it be conceded that it was negligent to run the train at this rate of speed at that place where the public was accustomed to walk, that would not help plaintiff's case, for such rate of speed was not the proximate cause of the death of Mr. Ferrell. Had this train been running four miles an hour, instead of forty, the result would have been the same if the other facts in evidence had been present; and there is nothing to indicate that the other facts would not have been present had the rate of speed been moderated.

2. The evidence establishes that the usual signals for the station and crossing were given. One of the witnesses says he did not hear them. There were no special signals given on account of the presence of these gentlemen on the tracks. The object of signals is to notify people of the coming of the train. Where they have that knowledge otherwise, signals cease to be factors.

3. There is no evidence of a failure to keep a lookout. The plaintiff relied upon deductions from the train failing to stop or give special signals to these gentlemen on the track. But there is nothing in the evidence to warrant such deductions. If a lookout was being kept, the engineer and fireman would have seen a party of gentlemen running down the west track. They were in perfect safety, and it is evident from the testimony of Mr. Bell that the time when he crossed the main line and the time when Mr. Ferrell attempted to cross it was so shortly before the passage of the train that nothing could have been done in the way of checking or stopping it. A careful watch, or a failure to watch, could not have influenced the result.

4. No negligence of the company could be predicated upon the presence of the stake between the tracks. The stakes were as rightfully there as the ties. They were being used for the proper construction and maintenance of the road. Had Mr. Ferrell stumbled over the end of a tie, there would have been just

as much room to argue that it was negligence to have an exposed tie where the public walked. The public who made use of the railroad track as a public way assumed the risks incident to its use as a railroad track.

Mr. Justice Riddick, in the case of *Perdue* v. *Railway Company*, 82 Ark. 172, said for the court: "The law exacts of the railway companies whose tracks are laid along or across public streets that they shall use reasonable care and diligence in constructing and maintaining such tracks, so that the public which has also the right to use the streets may not be injured. But, while they are responsible for injuries to travellers caused by their negligence, they are not insurers of the safety of travellers, and are not bound to provide against everything that may happen on the highway, but only for such things as ordinarily exist or such as may reasonably be expected to occur." This principle excludes the imputation of negligence against the company for permitting the stake to be between the tracks, because stumbling over it was only one of the things which may happen on a highway, not one which would be reasonably expected to occur.

The above statement of the principle is more favorable to the plaintiff than she was entitled to in this case, as the place of injury was not a public road, but merely a railroad track which the public was for the time being licensed to use for its convenience.

5. But, even if the railroad company was guilty of negligence in any of the particulars charged, yet the contributory negligence of Mr. Ferrell would defeat the action. He was twelve inches from the ends of the cross ties when he stumbled and fell in front of the moving train. He knew the train was coming. He had a good and safe place to travel on the west track; but for some reason he left that route, and was either running too near the main track for safety; or else, which is more probable, he was trying to follow his companion across to the east side, on which the depot was located. He would probably have safely crossed, as his companion did, had it not been that he unfortunately stumbled and met his death.

This is a stronger case of contributory negligence than was before the court in *Burns* v. *St. Louis S. W. Ry. Co.*, 76 Ark. 10,

in which the court declared that the facts therein, as a matter of law, showed contributory negligence.

The circuit court erred in submitting the case to the jury. Reversed and remanded.