MISSOURI PACIFIC RAILWAY COMPANY v. PRICE.

Opinion delivered December 1, 1930.

802

*Thomas B. Pryor, Vincent M. Miles* and *Thos. B. Pryor, Jr.,* for appellant.

*Daily & Woods, C. W. Knott* and *W. A. Bates,* for appellee.

SMITH, J.  The plaintiffs, Price, Bird and Irwin—appellees here—sustained injuries as a result of a collision of an automobile in which they were riding as guests with one of defendant's coal trains at a highway grade crossing on State Highway No. 71 in Sebastian County, which is the principal north and south highway in the county and carries a large amount of traffic.

The collision occurred about 7:35 P. M. on October 8, 1929, and the facts in relation thereto, stated in the light most favorable to appellees, are as follows: An engine had switched a train of thirty coal cars at Jenny Lind, a village on appellant's railroad.  The cars were being pushed across the highway on a spur or industrial track owned by the Western Coal & Mining Company and leading to its mines.  The conductor and two brakemen, all with lighted lanterns, were riding in the front or lead car.  The train was moving west, and as it came into the highway it was discovered that the switch was lined for track No. 3, the switch being about twenty feet west of the highway.  The conductor saw the switch lined for track No. 3, and, as he did not wish to enter upon that track, he gave a stop signal, but before the signal was executed the train had moved about a half car length on track No. 3.  A back-up signal was given, and the train began moving to the east, and when it had moved about ten or fifteen feet the automobile in which appellees were riding and which was approaching the train from the south ran into the last, or the next to the last, car in the train.

It was alleged that the railroad company was negligent in three respects: First, that there was no signboard at the crossing as required by § 8488, C. & M. Digest; second, that the train was unlighted; and, third, that there was a failure to keep an efficient lookout.

There was no signboard at the crossing as required by § 8488, C. & M. Digest. This section provides that every railroad shall cause boards to be placed, well supported by posts or otherwise, and constantly maintained, across each public road or street, where the same is crossed by the railroad, on the same level, and that said boards shall be elevated so as not to obstruct travel and to be easily seen by travelers, "and on each side of the said boards shall be printed, in capital letters of at least the size of nine inches each, the words, 'Railroad Crossing—look out for the cars while the bell rings or the whistle sounds'." After the collision occurred out of which this litigation arose, the railroad company erected a signboard conforming to the statute, but placed it on the north side of the track.

The statute does not require signboards to be placed upon both sides of the track, nor does it provide upon which side one shall be placed. Presumptively, it would be placed where its visibility would be greatest. The purpose of the statute was to give notice to the traveler of the presence of a railroad track. The silent letters of the sign could not advise that a train was already on the crossing or that one was approaching. It could only remind the traveler that there was present a railroad track, along which trains ran, and to look out for them "while the bell rings or the whistle sounds," so that no attempt would be made to cross the track after the bell had rung or the whistle had sounded until the approaching train had passed.

It was said in the case of *St. Louis & S. F. R. R. Co.* v. *Ferrell*, 84 Ark. 270, 105 S. W. 263, that: "The object of signals is to notify people of the coming of the train. Where they have that knowledge otherwise, signals cease

to be factors.'' Here the train had the crossing blocked when the automobile ran into it, and while it is insisted that the signboard would have had greater visibility than the moving train of thirty cars, we think that does not make the absence of the signboard the proximate cause of the collision. The signboard erected after the collision complied with the statute, although it was on the north side of the track, so that, if it had been where it now is, the train would have been between it and appellees as they approached the track. There was testimony that the signboard could be seen further than a coal car could be standing on the crossing, but it is mere conjecture that one driving from the south who did not see the train of cars would have seen the signboard, which, had it been there, would have been on the opposite side of the train from appellees. We conclude therefore that the absence of the signboard was not the proximate cause of the injury.

Many cases have defined the duty of railroads to maintain efficient lookouts in the operation of trains, but that duty was discharged by the conductor and the two brakemen who rode in the front or lead car with their lanterns as the train slowly ran over the crossing. The wrong switch had been lined, and to prevent the train going in on the wrong track it was necessary to back the train to a point where the lead car would be east of the switch so that the switch could be thrown. While this movement of the train was being executed, the conductor and the two brakemen got off the train on the north side, and before the movement was completed the automobile ran into the train.

The testimony is to the effect that the movements of the train which have been detailed blocked the crossing for a period of from three to five minutes. This was, of course, an approximation as to the elapsed time, but there is no testimony whatever that there was any delay in the movement of the train, or that the crossing was blocked unreasonably or for an unnecessary length of time.

What kind of a lookout could the railroad company have kept which would have prevented the driver of the automobile from running into the train? The answer given is that the brakeman should have been stationed on the south side of the crossing to give warning to approaching travelers, and that this was done after the collision until the automobile was extricated from the train.

No doubt the jury was warranted in finding that if one of the brakemen had been posted on the south side of the track with his lantern, he could have given signals which would have averted the collision. But was the court warranted in imposing this degree of care on the railroad? If watchmen are required to prevent travelers from running into moving trains, two will be necessary, one will not suffice. Here the conductor and the brakemen were standing, at the time of the collision, in the center of the crossing, but on the north side. The moving train was between them and the approaching automobile. Complete protection could have been afforded only by having a brakeman on the south side of the track as well as on the north. The railroad track was straight, and so was the highway for a distance of a quarter of a mile before crossing the railroad track at a right angle, and there was nothing within two hundred feet of the crossing to obstruct the traveler's view of the railroad.

Under the facts stated, we think there was no showing of negligence on the part of the railroad company. In the case of *Perdue* v. *St. Louis S. W. Ry. Co.*, 82 Ark. 172, 100 S. W. 901, Mr. Justice RIDDICK said that, while railroads are responsible for injuries to travelers caused by their negligence, they are not insurers of the safety of travelers, and are not bound to provide against everything that may happen on the highway, but only for such things as ordinarily exist, or such as may reasonably be expected to occur. See also *St. L. I. M. & S. Ry. Co.* v. *Aven*, 61 Ark. 141, 32 S. W. 500; *St. L. & S. F. R. R. Co.* v. *Ferrell*, 84 Ark. 270, 105 S. W. 263. So here, while it now appears that the railroad company might, by the use

of watchmen on both sides of the train at the crossing, have averted the collision, yet the practical operation of trains did not require that degree of care to forestall the injury, and a verdict should therefore have been directed in favor of the railroad company.

The judgments of the court below must therefore be reversed, and, as the cases appear to have been fully developed, they will be dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.