MISSOURI PACIFIC RAILROAD COMPANY v. MOORE.

4-5770 138 S. W. 2d 384

Opinion delivered February 19, 1940.

 

*Daggett & Daggett* and *Thomas B. Pryor*, for appellant.

*R. D. Smith* and *Marvin B. Norfleet*, for appellee.

McHANEY, J. Appellee brought this action against appellants to recover damages for personal injuries sustained by her at about 4:30 p. m., March 11, 1936, by reason of a collision between the car in which she was riding with her son, Dallas Moore, as driver and a train of appellants, Missouri Pacific Railroad Company and Guy A. Thompson, Trustee, on which the other appellant, W. R. Avery, was the engineer. Moore was driving his car east in the city of Marianna on Chestnut street, which is a continuation of highways Nos. 79 and 1, within said city, and was attempting to cross the railroad tracks at the crossing known locally as the "Light Plant Crossing," which is two or three blocks north of the depot in said city where the train had stopped a short time before the accident. The train was proceeding north on the branch line of the railroad leading to Memphis, Tennessee, same being the tracks farthest east at this crossing. There are three sets of tracks at this crossing, one set leading north to Wynne, Arkansas, on the west side of the crossing, and a switch or side track lying between the two east and west tracks. The collision occurred some distance north of the crossing, due to the fact that the driver of the car was unable to stop before reaching the east track on which the train was running and pulled to the left or north in an attempt to avoid a collision. The negligence laid and relied on was the failure to give the statutory signals and failure to keep a lookout. Appellants filed a general denial and entered an affirmative plea of negligence on the part of appellee in driving upon the tracks without looking or listening for the approaching train, or that the collision and injuries sued upon were solely and proximately caused by the negligence of the driver of the au-

tomobile in which she was riding, and that no negligence of appellant contributed to her injury.

Trial resulted in a verdict and judgment against appellants for $3,000, and this appeal followed.

At the conclusion of all the evidence, appellants requested a directed verdict, and we think the court erred in refusing said request, because there was no actionable negligence proven against them, and the undisputed proof shows the driver of the car was guilty of negligence in driving a car without brakes.

Dallas Moore, the driver, testified he saw the train when he was about 50 feet west of the crossing, and the train about 100 feet south of the crossing; that he had good brakes, was driving at the rate of 15 miles per hour, applied his brakes immediately and caused the car to skid. He and appellee say they heard no bell ringing or whistle blowing, but the question of failure to give the signals passes out of the case, because both appellee and the driver testify they saw the train 50 feet before they got to the crossing which was ample distance in which to stop the car at a speed of 15 miles per hour had it had proper brakes. The object of the statute (Pope's Dig., § 11135) requiring signals to be given is to warn travelers on the highway of the approach of the train, and when they have that knowledge without the signals being given, that fact becomes unimportant. *St. Louis & S. F. Railway* v. *Ferrell,* 84 Ark. 270, 105 S. W. 263; *Mo. Pac. R. R. Co.* v. *Price,* 182 Ark. 801, 33 S. W. 2d 366; *Chicago, R. I. & P. R. Co.* v. *Sullivan,* 193 Ark. 491, 101 S. W. 2d 175. We think the great preponderance of the evidence shows the signals were given practically constantly from the time the train left the depot, some two or three blocks south of the crossing in question, until the collision occurred, but we cannot say there was no substantial evidence to the contrary.

The undisputed evidence also shows that an efficient lookout was being kept by the fireman. He testified he was sitting in the fireman's seat box on the left side, saw the automobile approaching the crossing when it was about 100 feet west, with the back wheel skidding

on the pavement and thought the driver was not going to be able to stop; that he called to the engineer to stop and then stepped over to the engineer's side to see if the car made it across which it did not. He said the engineer stopped the train as soon as possible after notice was given him of the car; and that it takes some appreciable time to react to a perilous situation, first his mental reaction to danger, then the call to the engineer, then for the latter to react, apply the brake-valve, the air to travel through the air hose and the brakes to set to the wheels, all of which he estimated would take six seconds before the braking power would begin to have effect. This was only an estimate based on many years experience on an engine. But assuming that he was in error by three seconds, still the collision would have occurred anyway. His evidence that he was keeping a lookout, saw the car 100 feet or more from the crossing, and notified the engineer who stopped the train as soon as possible is undisputed. Another witness, Mr. Robertson, saw the fireman on the east side of the engine behind the engineer about the time the engine reached the crossing, but this is corroborative of the fireman who said he went over there to see if the car got by. The jury had no right to disregard this evidence.

As to the condition of the car in which appellee was riding and the speed at which it was traveling, W. R. Zirkle said he was standing inside the door of the Standard Service Station, of which he is the manager, about 200 feet west of the crossing, saw the car pass his station at a rapid rate of speed, heard the brakes applied on the car, saw the skid marks made by it beginning about 12 feet west of the store building and that such skid marks continued up to the crossing. W. H. Barker was then manager of Zeiger's service station, saw the car pass his station going pretty rapidly, over thirty miles per hour and has had 25 years experience as a mechanic and driving automobiles. After the wreck, the car was placed behind his garage and that he immediately examined it. It was a 1930 model Chevrolet, originally equipped with four-wheel brakes, but that it had no brake rods to the front wheels and no brake on the left

rear wheel, and the only brake found on the car was on the right rear wheel, and that this absence of brakes was not caused by the collision. He saw the skid mark made by the right rear wheel on the pavement, stepped it and that it extended 110 to 115 feet west of the crossing. Mr. Ted Zeiger also stepped the skid mark starting almost in front of the store and it measured about 100 feet. Appellee's own witness, Mr. Robertson, testified that the skidding noise of the automobile first attracted his attention; that it was going at a pretty high rate of speed and the driver was trying to stop; that it was traveling at a more rapid rate of speed than the engine; and that the car was probably 150 feet from the crossing when it began to stop. Nine days after the accident Dallas Moore signed a written statement, witnessed by his father and mother, in which he said he had no brakes on the front wheels.

These physical facts,—the skid mark running back from the crossing for upwards of 100 feet, no brakes on three wheels of his car,—belie his statements that he first became aware of the presence of the train only 50 feet from the crossing, and that his brakes were in good condition. In the face of them, his testimony to the contrary cannot be accepted as substantial evidence.

But if we concede that he first became aware of the presence of the train when he was 50 feet from the crossing and while traveling at 15 miles per hour, the absence of adequate brakes on his car is the only and proximate cause of the collision. Most of us drive automobiles. We know that a car, equipped with good brakes, traveling at a rate of 15 or 20 miles per hour, can be stopped in less than fifty feet. Simply because we are appellate court judges, we are not required to shut our eyes and consciences to facts that every person knows to be true and accept statements of witnesses that are contrary to those facts. The power to stop automobiles with proper brakes in certain distances is so well known that the legislature, in 1937, enacted act 300, the Uniform Act Regulating Traffic on the Highways of Arkansas, § 124 of which, now 6784 of Pope's Digest, requires a car to be equipped with service brakes adequate to stop such

car "when traveling 20 miles per hour within a distance of 25 feet when upon dry asphalt or concrete pavement surface free from loose material where the grade does not exceed 1 per cent.," which was the fact in this case.

We are, therefore, forced to the conclusion that the proximate cause of this collision was the defective condition of the car in which appellee was riding. It necessarily follows that the judgment must be reversed, and, as the cause appears to have been fully developed, it will be dismissed.

### ON REHEARING

McHANEY, J. It is earnestly insisted on rehearing that since the record discloses the motion for a new trial was not filed within three days after the verdict or decision was rendered, the court should have stricken same on the motion of appellee, which would prevent a consideration of the bill of exceptions on appeal, and necessarily result in an affirmance of the judgment. Section 1539, Pope's Digest, provides that the application for a new trial must be made at the same term and within three days after the verdict, "unless unavoidably prevented." The motion for a new trial was filed on the fifth day after the verdict was rendered, and the court found, after a hearing on the reason for the delay in filing the motion, "that due to the conditions above set forth and set out and contained in the second so called motion for a new trial were, in fact, true and correct, and that the delay referred to, in truth and in fact, was on account of said unavoidable conditions." We think it unnecessary to detail the unavoidable conditions that necessarily delayed the filing of the motion, further than to say that counsel for appellant entered upon the trial of another case for appellant immediately following this; that the court stenographer was so engaged to the extent that it was a physical impossibility for him to give to counsel for appellant the exceptions on which he relied sooner than he did; and that the court noted on the judges' docket the filing of an oral motion for a new trial on the third day, which was to be reduced to writing

and contain the assignments of error noted during the progress of the trial.

We think the trial court was not only justified in holding that counsel for appellant was "unavoidably prevented" from filing the motion within three days, but that a contrary holding would have been arbitrary and an abuse of discretion.

The petition for a rehearing will be denied.