**Delma Ruth SOLOMON and William M. Solomon, Plaintiffs–Appellants,**

v.

**R. Glenn HALL, W. Dickson Moss, III, Individually and d/b/a Cookeville Pathology Laboratory, Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 18, 1988.

Application for Permission to Appeal
Denied by Supreme Court
March 6, 1989.

John A. Day, Eugene N. Bulso, Jr., Boult, Cummings, Conners & Berry, Nashville, Thomas L. Reed, Jr., Reed & Watson, Murfreesboro, for plaintiffs-appellants.

Jon E. Jones, Moore, Jones, Rader & Clift, P.C., Cookeville, for defendants-appellees.

## OPINION

LEWIS, Judge.

The trial court granted defendants' motion for summary judgment in this malpractice suit, and plaintiffs have appealed.

The pertinent facts are as follows:

Because she experienced a painful discharge from her right breast, Plaintiff Delma Ruth Solomon visited her family physician. Her family physician referred her to Dr. Jules Trudel of Smithville, Tennessee. Dr. Trudel did a biopsy on plaintiff's breast by performing a partial mastectomy. He removed approximately one-fourth of the tissue from plaintiff's right breast.

Dr. Trudel sent the breast tissue to defendants R. Glenn Hall and W. Dickson Moss, III, both medical doctors who are partners d/b/a Cookeville Pathology Laboratory in Cookeville, Tennessee.

Defendants examined the tissue and reported to Dr. Trudel that the tissue exhibited "in situ and invasive carcinoma."

As a result of the diagnosis by defendants, Dr. Trudel called plaintiff back to his office and told her that she had cancer of the breast. Arrangements were made for plaintiff to be admitted to the hospital in Smithville to have her "breast removed."

Instead of going to the hospital in Smithville, she went to see Dr. Rob Roy, an oncologist in Nashville.[1]

Dr. Roy examined plaintiff and then referred her to Dr. Robert Sadler, a surgeon in Nashville. The pertinent portions of Dr. Sadler's affidavit are as follows:

On October 15, 1984, I admitted Mrs. Delma Solomon to the West Side Hospital. She came to me on a referral from Dr. Rob Roy. She said she had been operated on nine (9) days previously by a physician in Smithville, Tennessee, and that a biopsy report showed invasive carcinoma. She did not have a written pathology report.

Upon physical examination, which I performed on October 15, 1984, I found that Mrs. Solomon's right breast had a recent wound in the inferior half along the areolos cutaneous junction. Approximately twenty-five percent (25%) of the breast was missing as a result of this earlier partial mastectomy. There was no acute infection present, but there was moderte inflammation. There was a hard, deep mass in the center of the breast. The nipple was somewhat disfigured from the previous surgery.

In my medical opinion, the right breast needed additional biopsy regardless of the results of any prior biopsy. I, therefore, did not obtain the biopsy report from Cookeville, nor the slides from Cookeville Pathology Laboratory for review by the pathologist at West Side

---

1. While it is not significant, the record is not clear whether plaintiff was referred to Dr. Roy by Dr. Trudel or whether she went on her own. In any event, she visited Dr. Roy because she was diagnosed as having breast cancer.

Hospital prior to surgery. It was my intention to obtain biopsies of my own and rely on the evaluation of the pathologists at Nashville. I explained this to Mrs. Solomon prior to surgery and she understood and agreed.

Initially, I made a supra-areolar incision, and I removed almost the entire central segment of the breast. In the center of the tissue, there appeared to be gross evidence of carcinoma. In my professional opinion, it was necessary to remove almost the entire central segment of the breast for biopsy, and I made this decision without relying on the pathology from Cookeville in any way. The tissue, which I removed, contained a hard mass, which grossly appeared to be carcinoma.

The removal of this tissue for biopsy destroyed the blood supply to the nipple. This biopsy, together with the previous removal of approximately one quarter of the breast, which had occurred nine (9) days prior to admission, essentially destroyed the breast and dictated the removal of the remainder of the breast tissue. After my initial biopsy, the breast could not have been reconstructed.

The tissue, which I initially removed from Mrs. Solomon's breast, was examined by frozen section by pathologist Mary Schatz, M.D. Dr. Schatz reported to me that she did not find carcinoma. Following this, it was my information that Dr. Schatz, or someone in her office, made contact with someone in the pathologists' office in Cookeville, and the pathologists' office in Cookeville reported over the phone that Mrs. Solomon had an invasive carcinoma. I then excised the areolar nipple and all of the remaining tissue in the central portion of the breast and sent this to the pathologist for examination by frozen section, and this tissue was also reported to be free of carcinoma.

After the first biopsy, which I performed, the nipple and remaining portion of the breast was not salvageable. I proceeded with a modified radical mastectomy.

I did not rely on the pathology report from the Cookeville Pathology Laboratory at the time I admitted Mrs. Solomon to surgery. In my opinion, and on the basis of physical examination, Mrs. Solomon required an additional biopsy, and I intended to rely solely on the pathology done at the West Side Hospital. My initial biopsy, together with the prior removal of approximately twenty-five percent (25%) of the breast in Smithville, had destroyed the blood supply to the nipple and disfigured the breast beyond reconstruction. The breast was destroyed prior to the phone call, which Dr. Schatz's office reportedly made to the pathologists' office in Cookeville, and I would have proceeded with the modified radical mastectomy regardless of the telephone report.

Plaintiff presents the following two-part issue:

Whether the trial court erred in finding that Defendants' negligence did not proximately cause injury to the Plaintiff as a matter of law and in granting the Defendants' motion for summary judgment.

A. Whether Dr. Sadler's inconsistent statements regarding his reliance on the pathological findings of Defendants in removing Plaintiff's breast cancer created a genuine issue of material fact.

B. Whether Dr. Sadler's reliance on the pathological findings of the Defendants in performing his initial biopsy of the Plaintiff establishes a causal link between the Defendants' negligence and the Plaintiff's injuries.

For reasons hereinafter discussed, we deem it unnecessary to discuss part A.

Dr. Sadler states in his affidavit that the biopsy he performed, together with the biopsy performed by Dr. Trudel, "essentially destroyed the breast and dictated the removal of the remainder of the breast tissue. After my initial biopsy, the breast could not have been reconstructed." Dr. Sadler did not rely on the defendants' pathology report in removing plaintiff's breast and, because of the biopsy done by him and by Dr. Trudel, it was necessary

that he proceed with the "modified radical mastectomy regardless" of the defendants' pathology report.

Defendants argue that there is no causal connection between their alleged negligence in misdiagnosing the plaintiff as having breast cancer and the removal of her breast by Dr. Sadler, since Dr. Sadler did not rely on their pathology report. We think the record is clear that Dr. Sadler relied on his physical examination and his normal procedure in determining that an additional biopsy was required.

Defendants therefore insist that their negligence was not the proximate cause of the removal of the plaintiff's breast.

▮ The proximate cause of an injury generally is that act or omission which immediately causes or fails to prevent the injury or an act or omission occurring or concurring with another which, but for that act or omission, the injury would not have occurred. And the proximate cause is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and predominant cause; the term means closeness in causal relation. *Tri–State Transit Co. v. Duffey,* 27 Tenn.App. 731, 745–46, 173 S.W.2d 706, 712 (1940).

▮ The proximate cause of an injury is the act or omission which immediately causes or fails to prevent injury which would not have been inflicted in the absence of such an act or omission occurring or concurring with another. *Thompson v. Hawes,* 25 Tenn.App. 581, 587. 162 S.W.2d 71, 75 (1941).

A proximate cause of an injury is a cause that produced the result in continuous sequence and without which it would not have occurred. *Cartwright v. Graves,* 182 Tenn. 114, 134–35, 184 S.W.2d 373, 381 (1944).

▮ Defendants owed a duty to the plaintiff and, for the purpose of the summary judgment motion, they admit they breached that duty. Therefore, the ultimate question is whether the negligence of the defendants was the proximate or legal cause of the removal of the plaintiff's breast. There is a genuine issue of material fact as to whether or not defendants' alleged negligence is the proximate cause of plaintiff's injuries and damages.

Defendants' erroneous diagnosis of the breast tissue was the catalyst without which plaintiff would never have been in Dr. Sadler's office. That diagnosis set in motion the chain of events which ultimately caused plaintiff's breast to be removed.

Plaintiff, as a result of the misdiagnosis, was called back to Dr. Trudel's office who scheduled her for admission to the hospital to remove her breast. Either Dr. Trudel decided to send her to Dr. Roy for further examination or the plaintiff decided on her own to go there. There would have been no reason for plaintiff to visit Dr. Roy had it not been for the misdiagnosis. Following his examination, Dr. Roy referred plaintiff to Dr. Sadler. Dr. Sadler did not rely on defendant's diagnosis but performed a biopsy and had that tissue analyzed by another pathologist, who determined there was no malignancy. This diagnosis came too late since, as a result of the two biopsies, there was not enough of the breast left to be salvable.

Defendants argue that Dr. Sadler's biopsy which effectively destroyed the breast was an intervening cause which relieves them of their negligence.

▮ An intervening act which is a normal response to a situation created by negligence is not a superseding cause and defendant will not be relieved of liability by an intervening cause which could reasonably have been foreseen. *Gunn v. Int'l Harvester Co.,* 366 F.2d 349, 353 (6th Cir. 1966).

▮ An intervening act of a person, which is a normal response to a stimulant of the situation created by the defendants' negligent conduct, is not a superseding cause of harm to another which the defendant's conduct is a substantial factor in bringing about. *Brodie v. Miller,* 24 Tenn. App. 316, 322, 143 S.W.2d 1042, 1045 (1940).

The defendants alleged negligence in making an erroneous diagnosis began the

chain of events which ultimately led to the removal of plaintiff's breast. Nothing in Dr. Sadler's conduct was an intervening cause sufficient to break that chain.

Summary judgment is to be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.03. The purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed factual issues, or the determination of conflicting inferences reasonably to be drawn from facts. The purpose is to resolve controlling issues of law, and that alone. *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn.1988).

The judgment of the trial court in granting the motion for summary judgment is reversed and the cause remanded to the trial court for the collection of costs which are assessed to defendants, and for further proceedings.

TODD, P.J., and CANTRELL, J., concur.