IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2006 Session

GARY WEAVER, ET AL. v. THOMAS R. MCCARTER, ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. 98-0425-3     D.J. Alissandratos, Chancellor

No. W2004-02803-COA-R3-CV - Filed June 6, 2006

Plaintiffs Gary and Gail Weaver filed suit against Coldwell Banker Hoffman-Burke, Inc. Realtors ("Defendant CBHB"), Jim Perdue ("Defendant Perdue"), Thomas McCarter ("Defendant McCarter"), and Chip Hunter ("Defendant Hunter") seeking damages resulting from a failed real estate sale. The Plaintiffs specifically sought damages from Defendants CBHB and Perdue for negligence per se, negligent misrepresentation, and fraud. The trial court granted summary judgment in favor of the Plaintiffs on the issue of liability for all Defendants, but reserved ruling on damages for trial. At trial, the trial court awarded the Plaintiffs damages in the amount of $134,225.06 plus attorney's fees and held all Defendants jointly and severally liable for the entire award. Both the Plaintiffs and Defendants CBHB and Perdue assert various issues on appeal. For the reasons stated below, we affirm in part, reverse in part, and remand this case for further proceedings.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;
Reversed in part; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Charles F. Morrow, Elizabeth E. Chance and Michael D. Fitzgerald, Memphis, Tennessee, for the appellant, Coldwell Banker Hoffman-Burke, Inc., Realtors.

Robert L. Moore and Dawn Davis Carson, Memphis, Tennessee, for the appellant, Jim Perdue.

Henry C. Shelton, III, Memphis, Tennessee, for the appellees, Gary Weaver and Gail Weaver.

OPINION

*Factual Background and Procedural History*

This suit arises from a contract to sell Gary and Gail Weaver's ("the Plaintiffs") house ("the Hacks Cross House") located on Hacks Cross Road in Memphis, Tennessee. On November

1, 1994, Thomas McCarter ("Defendant McCarter") approached the Plaintiffs with an offer to purchase the Hacks Cross House for $680,000 in cash. The Plaintiffs agreed and subsequently entered into a verbal contract with Defendant McCarter for a cash sale. However, Defendant McCarter never consummated the sale and, thus, the transaction never closed.

In February 1997, the Plaintiffs purchased a second home located on Langston Cove ("the Langston Cove House") and soon after listed the Hacks Cross House with Jim Perdue ("Defendant Perdue") at Coldwell Banker Hoffman-Burke, Inc. Realtors ("Defendant CBHB"). On August 27, 1997, Defendant Perdue brought the Plaintiffs a written offer from Janet Hunter to purchase the Hacks Cross House for $575,000. The Plaintiffs eventually accepted a counter-offer of $595,000, with $10,000 in escrow, and signed a contract of sale (hereinafter referred to as "the sale contract") with Janet Hunter. Closing was set for September 30, 1997. However, the $10,000 escrow check bounced on September 17, 1997, and Defendants CBHB received notice of this on September 30, 1997. Furthermore, the sale contract was not signed by Janet Hunter, but rather Janet Hunter's name was forged by Chip Hunter ("Defendant Hunter"), Janet Hunter's husband, without Janet Hunter's knowledge or permission. Defendant Hunter signed Janet Hunter's name to the sale contract at the request of Defendant McCarter and while in the presence of Defendant Perdue. The Plaintiffs did not learn of the bounced escrow check or the forged sale contract until the closing date, when the Plaintiffs' attorney checked on the escrow funds and Defendant Perdue informed the Plaintiffs' closing attorney of the forgery. As a result, the closing did not occur on September 30, 1997.

Subsequently, on October 2, 1997, Defendant McCarter, in a memorandum to Defendant Perdue, affirmed that he was the true party who had made the offer on August 29, 1997, to purchase the Hacks Cross House for his daughter, Janet Hunter. While Defendant McCarter indicated a desire to honor the sale contract, he informed Defendant Perdue that his funding for the purchase would not be available until October 8, 1997. Although reserving their rights under the original sale contract, the Plaintiffs informed Defendant McCarter that they were willing to close the transaction if his funding came through by October 8, 1997. Despite this, the closing did not take place on October 8, due to a continued lack of funding. At that time, Defendant McCarter promised to fund the transaction on October 15, 1997. However, on that date, he delivered a $10,000 check to Defendant CBHB and stated that he no longer wanted to purchase the Hacks Cross House. The Plaintiffs subsequently demanded that Defendant Perdue pay them Defendant McCarter's $10,000 in earnest money, cancelled their listing agreement with Defendant CBHB, and placed the Hacks Cross House back on the market. However, the Hacks Cross House did not sell and the Plaintiffs eventually sold the Langston Cove House and moved back to the Hacks Cross House.

On May 11, 1998, the Plaintiffs filed suit against Defendants McCarter, CBHB, Perdue, and Hunter, seeking damages for negligence per se, negligent misrepresentation, breach of contract, and fraud. Specifically, the Plaintiffs asserted that Defendants Perdue and CBHB were negligent per se for violating section 62-13-403 of the Tennessee Real Estate Broker License Act of 1973. The Plaintiffs further asserted that Defendant Perdue was also negligent per se because

he violated section 62-13-404 of the Brokers Act, which provides for duties of reasonable care and loyalty between real estate brokers and their clients; and that Defendant Perdue was further guilty of negligent misrepresentation for failing to exercise reasonable care in communicating information to the Plaintiffs. The Plaintiffs next asserted a breach of contract claim against Defendant McCarter arguing that, although Defendant McCarter did not actually sign the contract, he had previously entered into an oral agreement, through Defendant Perdue, with the Plaintiffs to purchase their house, but failed to follow through with the purchase. Finally, the Plaintiffs asserted a fraud complaint against Defendants McCarter, Hunter, and Perdue, arguing that all three parties engaged in dishonest practices with a deceptive intent in order to induce the Plaintiffs to enter into an illusory contract to sell their house, which the Plaintiffs subsequently relied upon to their detriment. As remedies, the Plaintiffs sought either specific performance by Defendant McCarter or a judgment for $200,000 in compensatory damages against all defendants jointly and severally, along with punitive damages.

In response to the Plaintiffs' claims, Defendants CBHB and Perdue filed an answer arguing that Plaintiffs failed to assert a claim upon which relief could be granted. Defendant CBHB also asserted a counter-claim against the Plaintiffs alleging that they were entitled to split the $10,000 in earnest money with the Plaintiffs. In turn, Defendant Hunter denied forging Janet Hunter's signature and asserted the statute of frauds as an affirmative defense. Defendant McCarter denied being the contractual purchaser of the house and further asserted the statute of frauds as an affirmative defense. Defendant McCarter also asserted a counter-claim against Defendant Perdue, Defendant CBHB, and the Plaintiffs seeking the return of the $10,000 placed in escrow arguing that Defendant McCarter entered into no enforceable contract of sale and, thus, no legal basis existed for the continued retention of such funds. Defendants CBHB and Perdue and the Plaintiffs responded to Defendant McCarter's counter-complaint and asserted that an enforceable contract of sale did exist.

On July 13, 2000, the Plaintiffs filed a Motion for Summary Judgment against all Defendants. Defendant McCarter subsequently filed a motion seeking a directed verdict in relation to the return of the $10,000 escrow money.[1] On January 22, 2001, the trial court entered an order granting summary judgment in favor of the Plaintiffs against Defendants McCarter, Hunter, Perdue, and CBHB. The court also denied Defendant McCarter's directed verdict motion and further ordered that Defendant CBHB tender the $10,000 in earnest money to the Plaintiff, with said amount being credited against the damage award against Defendant McCarter. The amounts of compensatory and punitive damages were reserved for further hearing; however, the trial court did state that

> while all judgments rendered herein and subsequently by the Court shall be joint and several as against all Defendants, that among the Defendants the fault shall be apportioned [forty-five] percent (45%) to [Defendant] McCarter, ten percent

---

[1] Pursuant to Rule 50.01 of the Rules of Civil Procedure, a party may only move for directed verdict "at the close of the evidence offered by an opposing party or at the close of the case." Tenn. R. Civ. P. 50.01 (2005).

(10%) to [Defendant] Hunter, and [forty-five] percent (45%) to Defendants [Perdue and CBHB].

Nearly two years after the trial court's grant of summary judgment, Defendant CBHB filed a motion to reconsider, which the trial court denied.

Prior to the trial on damages, several events occurred which ultimately affected the trial court's ability to assess damages. First, on May 5, 2004, Defendant Perdue filed a Plea of Bankruptcy stating that he had filed bankruptcy and that, pursuant to an Order Modifying Discharge Injunction issued by the United States Bankruptcy Court for the Western District of Tennessee, the trial court would only be allowed to proceed to a judgment against Defendant Perdue for any causes of action *except* acts of fraud, fraudulent misrepresentation, or other cause of action which would permit the denial of discharge pursuant to 11 U.S.C. § 727 or render the judgment nondischargeable pursuant to 11 U.S.C. § 523. The trial court granted this plea. In addition to Defendant Perdue's filing of bankruptcy, Defendant McCarter died[2] and Defendant Hunter also filed bankruptcy. As a result, at trial, the Plaintiffs sought to collect damages arising from Defendants CBHB and Perdue's negligence per se and negligent misrepresentation, as well as Defendant McCarter's breach of contract.[3]

At the trial on damages, the parties presented testimony of Plaintiff Gary Weaver and John Jordan, a real estate appraiser who had appraised the Plaintiffs' property in 1997, near the time the sale contract was signed. The Plaintiffs asserted that the proof showed that they had suffered $300,000 in damages as a result of the Defendants conduct. After hearing the proof, the trial court first held the Plaintiffs would receive no damages in relation to their purchase and subsequent sale of the Langston Cove House because the purchase of this property occurred prior to the Plaintiffs' contract to sell the Hacks Cross House and, thus, damages resulting from the purchase and sale of the Langston Cove home were not reasonable consequential damages flowing from the Defendants' actions in regard to the Hacks Cross House. As a result of this finding, the trial court focused its award of damages on the following issues: 1) the contract price

---

[2] We find no indication in the record of a substitution of parties for Defendant McCarter pursuant to Rule 25.01 of the Tennessee Rules of Civil Procedure.

[3] In their brief, the Plaintiffs assert that at the trial on damages, they proceeded only against Defendants CBHB and Perdue "and sought damages only under the Tennessee Real Estate Broker[] Act of 1973 and for negligence." However, a review of the trial transcript reveals that the Plaintiffs also sought damages for their breach of contract claim against Defendant McCarter, although the Plaintiffs admitted that Defendant McCarter died apparently leaving no estate to satisfy a judgment and that "no formal Notice [or] substitution" was made pursuant to Rule 25.01.

In relation to damages suffered due to fraud, neither the Plaintiffs' brief nor the record in this case supports the conclusion that damages were awarded based upon fraud in this case. At trial, the Plaintiffs' counsel admitted that no judgment for fraud was awarded against Defendants CBHB and Perdue. Furthermore, the Plaintiffs indicated that they were unable to pursue damages against Defendant Hunter due to his filing Chapter 7 bankruptcy. Finally, a review of the record and transcript in this case fails to show that damages were awarded for any fraud alleged against Defendant McCarter.

for the Hacks Cross House minus the sales commission, 2) the duty of the Plaintiffs to mitigate damages, and 3) additional expenses incurred as a result of the Defendants' actions. After hearing the evidence submitted at trial, the trial court entered an Order of Judgment providing as follows:

> Plaintiffs should have a judgment, against Defendants, pursuant to their apportioned fault, in the amount of $55,600.00 for lost value of real estate; $3,000.00 for 1998 and $3,000.00 for 1999 for necessary maintenance costs, and $20,000.00 for attorneys fees, with prejudgment interest computed at 10% per year on each amount from the date incurred, or, in the case of attorneys fees, from the date paid, and statutory cost of this case. [Defendants] Perdue and [CBHB] have been apportioned fault in the amount of forty-five percent (45%), and judgment is awarded against these Defendants specifically in the amount of $60,118.53, and forty-five percent (45%) of statutory costs.

The Plaintiffs subsequently filed a Motion to Alter or Amend Judgment arguing that the trial court should apportion fault jointly and severally among the Defendants. The trial court granted the Plaintiffs' motion and, on October 4, 2004, entered an Amended Order of Judgment stating that the Plaintiffs

> should have a judgment against Defendants (except Defendant Chip Hunter, whose bankruptcy injunction precludes judgment, and Defendant[] Perdue, whose judgment is limited by the Order Modifying Discharge Injunction, entered on May 21, 2003, in the Bankruptcy Court for the Western District of Tennessee Western Division, Cause No. 98-21718L)[], jointly and severally, in the amounts of $55,600.00 for lost value of real estate; $3,000.00 for 1998 and $3,000.00 for 1999 for necessary maintenance costs, and $20,000.00 for attorneys fees, with prejudgment interest computed at 10% per year on each judgment from the date incurred, or, in the case of attorneys fees, from the date paid, for a total judgment of $134,225.06 and the costs of the cause.
>
>        IT IS THEREFORE ORDERED judgment shall be entered in favor of Plaintiffs Gary and Gail Weaver against Defendants Thomas McCarter,[4] Jim Perdue and Coldwell Banker Hoffman Burke Realtors, jointly and severally, in the amount of $134,225.06 and the costs of the cause, for which let execution issue if necessary. Judgment as to Defendant Perdue is limited by the Order Modifying Discharge Injunction . . . .

Defendants Perdue and CBHB appeal.

---

[4] As previously noted, we find no indication in the record of a substitution of parties for Defendant McCarter pursuant to Rule 25.01 of the Tennessee Rules of Civil Procedure. Despite this, the Defendants nonetheless received a judgment against Defendant McCarter.

## *Issues Presented*

The Defendants Perdue and CBHB raise the following issues, as restated, on appeal: 1) whether material issues of fact exist which preclude the grant of summary judgment in favor of the Plaintiffs; 2) if summary judgment was appropriate, whether the trial court was correct in its award of damages; and 3) if the trial court correctly awarded damages, whether the court erred in holding the Defendants jointly and severally liable. The Plaintiffs raise the additional issue of whether the trial court erred in failing to award the costs of the Langston Cove House during the listing of the Hacks Cross House as an element of the damages. For the reasons set forth below, we affirm in part, reverse in part, and remand this case for further proceedings.

## *Standard of Review*

Liability of the Defendants in this case was decided by summary judgment. Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall,* 847 S.W.2d 208, 214 (Ten. 1993). Specifically, the moving party must affirmatively negate an essential element of the nonmoving party's claim or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn.1998). When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.*

A mere assertion that the nonmoving party has no evidence does not suffice to entitle the moving party to summary judgment. *Id.* Rather, in determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.,* 15 S.W.3d 83, 89 (Tenn.2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley,* 960 S.W.2d at 588. We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn.2002).

In relation to the award of damages, our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d)(2006). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn R. App. P. 13(d) (2006).

*Analysis*

<u>*Grant of Summary Judgment Against Defendants CBHB and Perdue*</u>

In their complaint, the Plaintiffs first asserted that Defendants CBHB and Perdue were negligent per se because they violated section 62-13-403 of the Tennessee Real Estate Broker License Act of 1973. Specifically, the Plaintiffs alleged that

[Defendant] Perdue, as individual broker and [Defendant] CBHB as managing broker, both violated T.C.A. § 62-13-403. . . . Perdue violated his duty of reasonable care by dishonestly failing to disclose to his clients material and adverse facts of which he had knowledge, and which, if known by his clients, would have caused his clients to not enter into the subject contract. Specifically, the [Plaintiffs] would not have entered into the contract had they known that the Purchaser had no knowledge of the contract and was not the source of funding for the contract. The [Plaintiffs] would not have entered into the contract had they known that the signature of the [Janet Hunter] had been forged. The [Plaintiffs] would not have entered into the contract had they known the real offeror was [Defendant] McCarter, who failed to appear three years earlier at a closing on the same piece of real estate. Had the [Plaintiffs] known that the escrow check provided by Defendant McCarter had bounced, they would have immediately and justifiably rescinded the contract.

In order to succeed on a claim of negligence per se, a plaintiff must show that the defendant failed to perform a statutory duty and that injury proximately resulted from such failure. *Alex v. Armstrong*, 385 S.W.2d 110, 114 (Tenn. 1964). The plaintiff must further show that they were "within the protection of the law [or statute] and intended to be [benefitted] thereby." *Id.* As recently held by this Court in *Arnold v. Bowman*, No. E2004-01151-COA-R3-CV, 2005 WL 1488679 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Dec. 5, 2005), "[t]he Tennessee Real Estate Broker License Act of 1973 was created to 'protect the public from irresponsible or unscrupulous persons dealing in real estate.'" *Id.* at *11 (quoting *Business Brokerage Ctr. v. Dixon*, 879 S.W.2d 1, 3 (Tex. 1994)). Thus, as a preliminary matter, we find that the Plaintiffs, as real estate clients of Defendants CBHB and Perdue, certainly fall within the protections offered under the Act. As a result, we now address whether the trial court erred in granting summary judgment against Defendants CBHB and Perdue for negligence per se in violating section 62-13-403 of the Act.

Section 62-13-403 of the Act provides as follows:

A licensee who provides real estate services in a real estate transaction shall owe all parties to such transaction the following duties, except as provided otherwise by § 62-13-405, in addition to other duties specifically set forth in this chapter or the rules of the commission:

(1) Diligently exercise reasonable skill and care in providing services to all parties to the transaction;

(2) Disclose to each party to the transaction any adverse facts of which the licensee has actual notice or knowledge;

(3) Maintain for each party to a transaction the confidentiality of any information obtained by a licensee prior to disclosure to all parties of a written agency or subagency agreement entered into by the licensee to represent either or both of the parties in the transaction. . . .

(4) Provide services to each party to the transaction with honesty and good faith;

(5) Disclose to each party to the transaction timely and accurate information regarding market condition that might affect such transaction only when such information is available through public records and when such information is requested by a party.

(6) Timely account for trust fund deposits and all other property received from any party to the transaction; and

(7)(A) Not engage in self-dealing nor act on behalf of licensee's immediate family, or on behalf of any other individual, organization or business entity in which the licensee has a personal interest without prior disclosure of such interest and the timely written consent of all parties to the transaction; and

(B) Not recommend to any party to the transaction the use of services of another individual, organization or business entity in which the licensee has an interest or from whom the licensee may receive a referral fee or other compensation for the referral, other than referrals to other licensees to provide real estate services under the Tennessee Real Estate Broker License Act of 1973, without timely disclosing to the party who receives the referral, the licensee's interest in such referral or the fact that a referral fee may be received.

Tenn. Code Ann. § 62-13-403 (1997).

In their respective briefs, Defendants CBHB and Perdue argue that the trial court erred in granting summary judgment against them due to the existence of disputed material facts. Specifically, Defendant CBHB asserts disputed issues of material fact exist as to 1) whether Defendant Perdue constituted an employee or independent contractor of Defendant CBHB, 2) whether the fact that Janet Hunter had not signed the contract at issue constituted material information that Defendants negligently failed to provide to the Plaintiff, and 3) whether Defendant Perdue negligently or fraudulently misrepresented any material facts to the Plaintiffs.[5] Likewise, Defendant Perdue argues that disputed issues of material fact exist as to 1) whether he knew of the Plaintiffs' prior dealings with Defendant McCarter, and thus had notice that Defendant McCarter's involvement in the transaction would constitute a material fact, 2) whether

_____

[5]We address the negligent misrepresentation and fraud claims asserted against Defendant Perdue separately in this opinion.

he acted in good faith in presenting the forged sale contract to the Plaintiffs.  We will address these issues in turn.

In regard to Defendant CBHB's first assertion regarding Defendant Perdue's employment status, we note that in their initial complaint the Plaintiffs asserted that both Defendant Perdue, as individual broker, and Defendant CBHB, as managing broker, violated the Tennessee Real Estate Broker License Act of 1973.  The Plaintiffs later moved for summary judgment, asserting that an "agency relationship" existed between Defendants CBHB and Perdue.  However, in their response to this motion, Defendants CBHB and Perdue failed to raise the issue of whether Defendant Perdue constituted an employee or an independent contractor.  Rather, Defendant CBHB argued that Defendant Perdue was an independent contractor for the first time in its "Motion to Reconsider," filed nearly two years after the trial court granted summary judgment in favor of the Plaintiffs.[6]  On appeal, Defendant CBHB asserts that the trial court erred in denying Defendant CBHB's "Motion to Reconsider" and thus failing to consider whether a disputed issue of material fact existed as to whether Defendant Perdue was an employee or independent contractor.  We disagree.

The Tennessee Supreme Court recognized in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000) that

> the Tennessee Rules of Civil Procedure do not authorize motions "to reconsider" a grant of summary judgment.  *See McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 794 n.3 (Tenn. Ct. App. 1997).  Instead, the rules allow for motions "to alter or amend a judgment," Tenn. R. Civ. P. 59.04, or motions "to revise" a non-final partial judgment, *see* Tenn. R. Civ. P. 54.02.

*Harris*, 33 S.W.3d at 743.  In this case, the trial court granted summary judgment in favor of the Plaintiffs on the issue of liability, but reserved the issue of damages for trial.  Since the trial court made no determination under Rule 54.02 that the grant of summary judgment should be construed as final, we perceive Defendant CBHB's motion to reconsider to instead constitute a motion to revise under Rule 54.02 of the Tennessee Rules of Civil Procedure, which provides for motions to revise non-final partial judgments.  *See* Tenn. R. Civ. P. 54.02 (2005); *Taylor v. State of Tenn.*, No. M2002-02608-COA-R3CV, 2005 WL 628500 (Tenn. Ct. App. Mar. 17, 2005) (*no perm. app. filed*).

Having interpreted Defendant CBHB's motion as a motion to revise under Rule 54.02, we next address whether the trial court erred in denying Defendant CBHB's motion and, thus, failing to consider Defendant CBHB's argument that Defendant Perdue was an independent contractor.  In *Harris*, the Tennessee Supreme Court held that

---

[6]The briefs and record in this case indicate that Defendants CBHB and Perdue were represented by the same counsel at the time the trial court granted summary judgment.  However, Defendant CBHB had retained separate counsel at the time it filed its "Motion to Reconsider."

[w]hen additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

*Harris*, 33 S.W.3d at 745. In the case at bar, the record shows that Defendant CBHB never alleged that information concerning Defendant Perdue's employment status was unavailable at the time it responded to the Plaintiffs' initial summary judgment motion. Furthermore, the record is devoid of any other explanation on the part of Defendant CBHB as to why this issue was not raised. In light of these circumstances, we find that the trial court did not err in denying Defendant CBHB's motion to revise, and thus did not err in failing to consider the issue of whether Defendant Perdue was an independent contractor.

Having found that the trial court did not err in denying Defendant CBHB's motion to revise, we now examine the propriety of the trial court's grant of summary judgment in light of Defendants CBHB and Perdue's remaining assertions of error. After a review of the record, we find that the trial court did not err in granting the Plaintiffs' summary judgment motion. Although Defendants CBHB and Perdue assert that factual issues exist concerning Defendant Perdue's knowledge of the Plaintiffs' prior history with Defendant McCarter, Defendant Perdue's knowledge concerning Defendant McCarter's "reliability" or "intentions to defraud," and Defendants CBHB and Perdue's knowledge concerning the bounced escrow check, we find any potential factual disputes in regard to these issues to be immaterial. The undisputed facts in this case show that Defendant Perdue knew that Defendant Hunter signed his wife, Janet Hunter's, name to the sale contract at issue without her knowledge or consent. Despite this, Defendant CBHB nonetheless asserts in its brief that an issue of material fact exists as to "[w]hether the fact that Janet Hunter had not signed the contract at issue constituted material information that [Defendants Perdue and CBHB] failed to provide to [the Plaintiffs]." We disagree with this contention.

This Court has long recognized "that the marital relationship alone does not supply evidence of a principal and agency relationship giving [one spouse] the power of an agent to contract [on behalf of the other]." *Hammond v. Herbert Hood Co.*, 221 S.W.2d 98, 102 (Tenn. Ct. App. 1948) (perm. app. denied May 6, 1949). As a result, Defendant Hunter's act of signing Janet Hunter's name to the real estate contract, without her knowledge or permission, did not bind Janet Hunter to the sale contract. In light of this, we find that the forgery of Janet Hunter's name to the contract at issue certainly constituted an adverse and material fact which the record undisputedly shows Defendant Perdue had notice of and, thus, should have communicated to the Plaintiffs under section 62-13-403. Since it is undisputed in the record that 1) Defendant Perdue failed to disclose the forgery of Janet Hunter's name to the Plaintiffs, 2) that this failure caused

the Plaintiffs to enter into a contract that they would not have entered otherwise, and 3) that the Plaintiffs were injured as a result, we find that the trial court did not err in granting summary judgment in favor of the Plaintiffs and finding as a matter of law that Defendant Perdue, as individual broker, and Defendant CBHB, as managing broker, violated Tenn. Code Ann. § 62-13-403 and were thus negligent per se.

Having affirmed the trial court's grant of summary judgment against Defendants CBHB and Perdue under section 62-13-403, we now address the trial court's grant of summary judgment against Defendant Perdue for the Plaintiffs' remaining claims. As previously noted, the Plaintiffs in their complaint also asserted that Defendant Perdue was negligent per se for violating section 62-13-404 of the Tennessee Real Estate Broker License Act of 1973 and also charged Defendant Perdue with negligent misrepresentation and fraud. We address each of these claims in turn.

In regard to the Plaintiffs' first claim, we note that section 62-13-404 of the Tennessee Code provides as follows:

> Any licensee who acts as an agent in a transaction regulated by the Tennessee Real Estate Broker License Act of 1973 owes to such licensee's client in that transaction the following duties, to:
>     (1) Obey all lawful instructions of the client when such instructions are within the scope of the agency agreement between licensee and licensee's client; and
>     (2) Be loyal to the interests of the client. A licensee must place the interests of the client before all others in negotiation of a transaction and in other activities, except where such loyalty duty would violate licensee's duties to a customer under § 62-13-402 or a licensee's duties to another client in a dual agency.

Tenn. Code Ann. § 62-13-404 (1997). This Court has long recognized that real estate agents owe a duty of loyalty to their clients "and may not prejudice the interests of his [clients] to favor himself *or others*." *Reece v. Homestead Realty, Inc.*, 626 S.W.2d 711, 712 (Tenn. Ct. App. 1981) (emphasis added). A part of this duty of loyalty "includes an obligation on the part of the agent to make full and complete disclosure of facts that will benefit his [client]." *Bessey v. Arenallo*, No. 85-186-II, 1986 WL 3987 (Tenn. Ct. App. Apr. 2, 1986), *perm. app. denied concurring in results only* (Tenn. July 21, 1986)(citing *Marshall v. Sevier County*, 639 S.W.2d 440, 443 (Tenn. Ct. App. 1982).

As stated earlier, the undisputed facts in this case show that Defendant Perdue knew that Janet Hunter did not sign the real estate contract at issue, and further knew that Janet Hunter had no knowledge of and did not consent to the sale contract. Furthermore, the undisputed facts show that Janet Hunter never granted Defendant Hunter, her husband, permission to sign the contract on her behalf. Despite these facts, it is undisputed that Defendant Perdue informed the Plaintiffs that he had obtained an offer from Janet Hunter to purchase the Hacks Cross House and did not inform the Plaintiffs' of the fact that Janet Hunter's signature was forged and, thus, she

was not legally bound to the provisions of the contract. As a result, the Plaintiffs entered into a contract they would otherwise not have and were ultimately damaged as a result. Based upon these undisputed facts, we find that the trial court did not err in awarding summary judgment to the Plaintiffs and, thus, finding as a matter of law that Defendant Perdue was negligent per se for violating section 62-13-404 of the Tennessee Code due to his breach of loyalty to the Plaintiffs.

We next address the trial court's grant of summary judgment on the Plaintiffs' negligent misrepresentation claim.

> In order to prevail on [a] negligent misrepresentation claim, [plaintiffs] must establish the following four elements:
> (1) the defendant is acting in the course of its business, profession, or employment, or in a transaction in which it had a pecuniary (as opposed to gratuitous) interest; and
> (2) the defendant supplies faulty information meant to guide others in their business transactions; and
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
> (4) the plaintiff justifiably relies upon the information.

*Samford v. Ogles*, No. M2003-01299-COA-R3-CV, 2004 WL 2254026, at *2-3 (Tenn. Ct. App. Oct. 6, 2004)(*no perm. app. filed*)(quoting *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (citation omitted)). In the case at bar, the undisputed facts show that Defendant Perdue, while acting as the Plaintiffs' real estate agent, informed the Plaintiffs that Janet Hunter had signed the sale contract to purchase the Plaintiffs' house. However, the undisputed facts also show that Janet Hunter's name was forged by Defendant Hunter without her permission or consent. Furthermore, the undisputed facts show that Defendant Perdue knew that Janet Hunter had not signed the sale contract, had no knowledge of the sale contract, and, thus, had not consented to the sale contract. Finally, at the time of the Plaintiffs' initial summary judgment motion, Defendant Perdue did not dispute the Plaintiffs' assertion that, had they known that Janet Hunter had no knowledge of the contract, they would not have agreed to enter into the said contract. Based upon these facts, we find that the trial court did not err in awarding summary judgment against Defendant Perdue the issue of negligent misrepresentation.

Finally, we address the propriety of the trial court's grant of summary judgment against Defendant Perdue on the Plaintiffs' assertion of fraud. In order to prevail on a claim of fraud, a plaintiff must show

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation['s] falsity-that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is

based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Shahrdar v. Global Housing, Inc*., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (perm. app. denied October 19, 1998) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). Once again, the undisputed facts in this case show that Defendant Perdue knowingly and intentionally misrepresented to the Plaintiffs the fact that Janet Hunter had signed the real estate contract in dispute, thus making an offer on the Plaintiffs' house. Rather, Defendant Perdue knew that Defendant Hunter signed Janet Hunter's name without her knowledge or consent. As a result, Janet Hunter was not obligated to the terms of the contract. Due to Defendant Hunter's representations, the undisputed facts presented at the time of summary judgment show that the Plaintiffs entered into a contract that they otherwise would not have and were ultimately damaged as a result. Based upon the forgoing, we find that the trial court did not err in granting summary judgment against Defendant Perdue for fraud.

## *Damages*

Defendants CBHB and Perdue argue that the trial court erred in awarding damages in this case for three reasons. First, the Defendants assert that the trial court erroneously determined the market value of the Hacks Cross House. Second, the Defendants assert that the trial court erred in holding the Defendants jointly and severally liable for all damages. Finally, the Defendants aver that the trial court erred in awarding attorney's fees to the Plaintiffs. In turn, the Plaintiffs also assert that the trial court erred in failing to award the costs of the Langston Cove House as an additional element of damages. We address each of these issues below.

### *(1) Valuation of the Hacks Cross House*

In their briefs, Defendants CBHB and Perdue argue that the trial court erred in determining the value of the Hacks Cross House. Specifically, they assert that the trial court erred when it allowed the use of the Shelby County Tax Assessor's value in determining the fair market value of the property. Rather, the Defendants argue that the trial court should have relied on the testimony presented by Mr. Jordan, an appraiser hired to appraise the Hacks Cross House in 1996. For the foregoing reasons, we disagree.

In determining the fair market value of property, Tennessee courts look at what "a reasonable buyer would give if he were willing to, but did not have to, purchase and that a willing seller would take if he were willing to, but did not have to, sell." *Nashville Hous. Auth. v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976). In this case, the trial court considered the testimony from Mr. Jordan as well as an appraisal from the Shelby County Tax Assessor's office and made the following findings:

Now, the Court has listened with great interest to Mr. Jordan. While the Court was very disappointed and surprised that Mr. Jordan–with all his years and experience of

being an appraiser–had absolutely no idea that there was a statutory duty of the assessor to even appraise the property, but merely to tax property without any understanding of how the assessor would come up with the figure to tax, while this Court found that incredible, they must, nevertheless, take a look at the level of experience that Mr. Jordan has and his methodology of approaching the appraisal.

Now, his appraisal was such that he came to the conclusion that asking $650,000 shortly after he appraised it would be reasonable. His range of figures went all the way down to $586,700 as reasonable. Mr. Jordan indicated that if it doesn't sell within three to six months when properly marketed, then there's a problem somewhere. This Court doesn't find this property failed to be properly marketed after this sale fell through. In fact, the Court finds, to the contrary, that [Plaintiff Gary Weaver] testifies that right after the sale failed, he went on ahead and got another real estate agent who tried to sell the property. There's no testimony that the real estate agent was any less good than any other reasonably competent real estate agent. The Court cannot presume incompetence without proof. In fact, it must presume, to the contrary, that a prudent person is confident in what they do until one proves to the contrary. Yet, there was zero offers. None whatsoever. The [Plaintiffs] went on to try to market this property on their own for some considerable period of time and had zero offers. They even offered it without even putting a price on it and had zero offers and only [a] couple of inquiries.

Obviously, Mr. Jordan by his own testimony, in this Court's opinion, was off the mark. . . .

. . . .

The . . . appraisal by the assessor is, in this Court's opinion, admissible into evidence. The Court, under these circumstances, will weigh it. Now the Court takes into account that Mr. Jordan testified that had this property, in his opinion, been worth only $443,900 he would have bought it at that point. The Court accepts that as truthful. . . . The Court has not had any testimony of any other willing buyers at any other price other than the one that fell through, the [$]595,000, which this Court does not consider to be valid for this Court to consider since, obviously, that person breached that contract and backed right out of the deal. So the Court doesn't have a particular scientific basis, but can only go with as rational [a] basis as it can.

The Plaintiff[s] invited the Court to accept the $443,900 value of the assessor at the time. . . . Mr. Jordan's estimates are obviously way off the mark. The best [evidence] being that people trusted his assessments and it didn't work. And his lowest assessment was $586,700. This Court will take, therefore, that figure minus the $443,900 figure and comes up with a difference of $142,800. It will take that

difference and divide it by half which is $71,400. Add that back to the assessor's evaluation of $443,900 and get a figure of $515,300.

The trial court used the figure of $515,300 as the fair market value of the Plaintiffs' house in determining damages in this case. After a careful review of the record in this case, we find that the evidence fails to preponderate against the trial court's determination in this regard. We affirm.

*(2) Apportionment of Damages*

In awarding damages in this case, the trial court issued an order stating as follows:

IT FURTHER APPEARING TO THE COURT, for the reasons set forth in the Court's oral findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52, which the Court hereby incorporates by reference, that Plaintiff should have a judgment against Defendants (except Defendant Chip Hunter, whose bankruptcy injunction precludes judgment, and Defendant[] Perdue, whose judgment is limited by the Order Modifying Discharge Injunction, entered on May 21, 2003, in the Bankruptcy Court for the Western District of Tennessee Western Division, Cause No. 98-21718L)[], jointly and severally, in the amounts of $55,600.00 for lost value of real estate; $3,000.00 for 1998 and $3,000.00 for 1999 for necessary maintenance costs, and $20,000.00 for attorneys fees, with prejudgment interest computed at 10% per year on each amount from the date incurred, or, in the case of attorneys fees, from the date paid, for a total judgment of $134,225.06 and the costs of the cause.

On appeal, Defendants CBHB and Perdue assert that the trial court erred in holding all Defendants jointly and severally liable for the damages suffered by the Plaintiffs. In their respective briefs, both sides assert arguments dealing with whether damages should be awarded jointly and severally or under principles of comparative fault, as set forth under *McIntire v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992). However, due to the ambiguous nature of the order awarding damages, we are unable to address this issue.

In their complaint, the Plaintiffs asserted negligence claims against Defendants CBHB and Perdue and a breach of contract claim against Defendant McCarter. The Plaintiffs further asserted claims of fraud against Defendant McCarter, Defendant Perdue, and Defendant Hunter. However, the record shows that, at trial, the court was precluded from assessing damages related to fraud against Defendant Perdue due to the Order Modifying Discharge Injunction issued in relation to Defendant Perdue's filing for bankruptcy. Furthermore, the trial court was also prevented from assessing damages against Defendant Hunter for fraud due to Defendant Hunter's filing of Chapter 7 bankruptcy. Thus, as it appears from the trial transcript, the trial court heard evidence regarding damages resulting from the negligent acts of Defendants CBHB and Perdue as well as damages stemming from the Plaintiffs' breach of contract claim against Defendant

-15-

McCarter.[7]  However, while the record makes clear the total amount of damages suffered by the Plaintiffs, neither the trial transcript nor the final order of judgment make clear the amount of damages awarded for each respective claim.  Rather, all damages appear to have been lumped together and applied jointly and severally among the Defendants.  While principles of comparative fault and joint and several liability have been applied in cases involving multiple tortfeasors, the Plaintiffs have not cited, nor has this Court found, any case law allowing for a negligent defendant to be held jointly and severally liable for another defendant's breach of contract when the negligent defendant was not a party to the contract breached.  Rather, this Court's research indicates that liability under tort is separate and distinct from liability arising under breach of contract and, thus, and any judgment for breach of contract should be against the party guilty of the breach.  *See Packaging Consultants, Inc., v. Garvey*, No 89-224-II, 1989 WL 155365, at *4-5 (Tenn. Ct. App. Dec. 20, 1989)(*no perm app. filed*).

In light of the ambiguity concerning the trial court's award of damages, we remand this case for a determination of the amount of damages resulting from the Plaintiff's respective negligence and breach of contract claims.

*(3) Award of Attorney's Fees*

Defendants CBHB and Perdue finally argue that the trial court erred in holding them jointly and severally liable for the Plaintiffs' attorney's fees because "no contract existed between [Defendant] Perdue and [the Plaintiffs] allowing for attorney fees nor was there any statute allowing recovery of attorney fees [against Defendants CBHB and Perdue."  In response, the Plaintiffs assert that the trial court "did not grant damages for breach of contract, but rather damages for breach of [Defendants CBHB and Perdue's] statutory duty and misrepresentation."  As a result, the Plaintiffs aver that they are entitled to attorney's fees in order to be "fully remedied" for the wrongs committed by Defendants CBHB and Perdue.  We disagree.

First, although the Plaintiffs' assert in their brief that the trial court granted damages for breach of statutory duty and misrepresentation rather than for breach of contract, we have previously noted that the trial transcript indicates otherwise.  Most notably, the Plaintiffs' own counsel argued at trial as follows:

> We are talking about contract damages here.  That's the measure of compensatory damages that we see.  And it's the breach of contract damages that Your Honor's Order has set forth.

_____

[7]As noted previously, the Plaintiffs asserted in their brief that they only pursued damages at trial against Defendants CBHB and Perdue arising from negligence per se and negligent misrepresentation.  However, the trial transcript also shows that the Plaintiffs sought, and subsequently received, a judgment for damages arising from Defendant McCarter's breach of contract, although the Plaintiffs admitted that Defendant McCarter was deceased and apparently had no assets on which to execute judgment.  In regard to damages for fraud on the part of Defendant McCarter, the trial record, as well as the Plaintiffs' assertions in their brief on appeal, appear to show that no damages for fraud were sought against Defendant McCarter at the trial.

As previously stated, due to the ambiguous nature of the trial court's award of damages, we are remanding this case for clarification regarding what damages are attributable to the Plaintiffs' respective negligence and breach of contract claims. However, we nonetheless feel compelled to address the trial court's finding that Defendants CBHB and Perdues are liable for the payment of the Plaintiffs' attorney's fees.

In Tennessee, courts follow the "American Rule," whereby litigants are required to pay their own attorney's fees unless a statute or contractual provision provides otherwise. *State v. Brown and Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). In awarding attorney's fees in this case, the trial court stated that

> we're under the American rule as [you all] know, and normally, the attorneys fees would not be allowed. However, because the *contract* has provided for attorney fees, therefore, the question really is, is this any less a measure of damage than any other damage? And the answer is, no. (Emphasis added.)

The only contract in the record providing for the payment of attorney's fees was the sale contract of sale to which Janet Hunter's name was forged by Defendant Hunter. The provision in sale contract dealing with attorney's fees provides as follows:

> COSTS TO ENFORCE CONTRACT: Should any party to this Contract bring an action against any other party to this Contract to enforce any claim hereunder, the prevailing party or parties shall be entitled to recover all costs of said action and reasonable attorney fees. The term "prevailing party or parties" as used in this paragraph shall be defined as the party or parties in whose favor a court shall rule or against whom no relief is granted, provided such ruling becomes final and non-appealable.

Although the sale contract does provide for the payment of attorney's fees, the record shows that neither Defendant CBHB nor Defendant Perdue were parties to this contract. Rather, the only contract in the record between the Plaintiffs and Defendants CBHB and Perdue was an Exclusive Listing Contract. However, this contract contains no provision providing for the payment of attorney's fees to the Plaintiffs in the event of litigation. As a result, we find that Defendants CBHB and Perdue are not contractually bound to pay the Plaintiffs' attorney's fees.

Having found no contractual provision mandating the payment of attorney's fees by Defendants CBHB and Perdue, we next examine whether such fees are provided for by statute. As previously discussed, due to the Order Modifying Discharge Injunction filed by Defendant Perdue, the trial court only proceeded to award damages against Defendants CBHB and Perdue for violations of sections 62-13-403 and 62-13-404 of the Tennessee Real Estate Broker License Act of 1973 as well as for negligent misrepresentation. After reviewing the Brokers Act, we find no provision allowing for an award of attorney's fees due to a breach of the duties set forth under sections 62-13-403 or 62-13-404. *See* Tenn. Code Ann. § 62-13-101 *et seq* (Supp. 2005).

Furthermore, this Court has previously held that attorney's fees may not be awarded based upon a claim of negligent misrepresentation. *See Don Smith Ford, Lincoln-Mercury, Inc., v. Bolinger*, No. E2003-02764-COA-R3-CV, 2005 WL 711963, at *5 (Tenn. Ct. App. Mar. 29, 2005)(*no perm. app. filed*)(holding that it is improper for trial courts to award attorney's fees "based upon a common law theory of negligent misrepresentation"). Since we can find no legal basis for an award of attorney's fees against Defendants CBHB and Perdue, we reverse the trial court and hereby vacate the award of attorney's fees against Defendants CBHB and Perdue.

### (4) Costs of the Langston Cove House

The Plaintiffs assert on appeal that the trial court, in determining the total amount of damages, erred in failing to consider costs incurred from the Plaintiffs' ownership of the Langston Cove House during the first two years following the failure of the sale of the Hacks Cross House. We disagree.

As previously discussed, the trial court appears to have awarded damages based upon claims of negligence per se, negligent misrepresentation, and breach of contract. Under Tennessee law, a defendant found guilty of a negligent act is liable for damages proximately resulting from the breach of due care. *Solomon v. Hall*, 767 S.W.2d 158, 161 (Tenn. Ct. App. 1988). In a breach of contract case, the purpose of damages "is to place the plaintiff in the position he would have been in had the contract been fulfilled in accordance with its terms." *Garvey*, 1989 WL 155365 at *4. "The damages recoverable are those that may be fairly and [reasonably] be considered as arising out of the usual course of events from the breach or those that may [reasonably] be supposed to have been in the contemplation of the parties when they made the contract." *Id.*

In refusing to award damages based upon the Langston Cove House, the trial court made the following findings:

> [W]hen the Plaintiff[s] chose to buy a home and still own [another] home, they assumed a responsibility and a risk that they cannot transfer now to these Defendants. These Defendants did not enter into the type of negotiations or . . . agreement wherein they were assuming that kind of obligation. However, these Defendants did, by the prior Ruling of this Court, violate the statutory duty to communicate. They were negligent, they created the circumstances that now caused the Plaintiff to have two homes. And while those Defendants are not responsible for the Langston property, they are responsible for those damages that naturally flow as a result of their misconduct on the Hacks Cross property.
>
> This Court will not consider, as a measure of damages, any of the damages related to Langston because it was not an obligation of the Defendants. If the Langston property had been a gift, it would not have mattered. If the Langston property had cost 10 times as much, it would not have mattered. This is not the

reasonable consequential damage that flows from the failure to Defendants in the form they should have regarding Hacks Cross. This is not reasonably foreseeable.

In this case, we agree with the trial court that any alleged damages resulting from the Plaintiffs' purchase of the Langston Cove House were not reasonably consequential from the acts of the Defendants in this case. Rather, the record shows that the Plaintiffs had purchased the Langston Cove House prior to placing the Hacks Cross House on the market with Defendants CBHB and Perdue and prior to any negligent acts by Defendants CBHB and Perdue, and prior to entering into the sale contract at issue in this case. Based upon these facts, we find that the trial court did not err in not considering the Langston Cove House in determining damages.

### *Conclusion*

Based upon the foregoing, we affirm the trial court's grant of summary judgment against Defendant Coldwell Banker Hoffman-Burke, Inc. and Defendant James Perdue. We also affirm the trial court's determination of value in regard to the Hack's Cross House as well as its exclusion of the costs associated with the Langston Cove House from damages. However, we reverse the trial court's ruling that Defendants CBHB and Perdue are liable for attorney's fees and remand this case for further clarification concerning the amount of damages awarded in respect to the Plaintiffs' claims of negligence per se, negligent misrepresentation, and breach of contract. Costs of this appeal are awarded against the Appellants, Coldwell Banker Hoffman-Burke, Inc. and James Perdue, and their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE